UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| D'ANDRE WHITLEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:16 CV 1537 (JMB) |
| | ) |
| MICHAEL BOWERSOX, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the petition of D'Andre Whitley for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I.    Procedural Background**

Petitioner D'Andre Whitley is presently incarcerated at the South Central Correctional Center pursuant to the judgment and sentence of the Circuit Court of Saint Louis City. On February 29, 2012, a jury convicted petitioner of one count of first-degree assault (Count I), in violation of § 565.050;[1] one count of first-degree burglary (Count III), in violation of § 569.160; and two counts of armed criminal action (Counts II and IV). The jury found petitioner not guilty of an additional charge of first-degree assault and the associated armed criminal action charge (Counts VII and VIII).[2] Verdicts  [Doc. # 9-4 at 73-78].[3] On April 13, 2012, the trial court

---

[1] All statutory references are to Mo. Rev. Stat.

[2] Counts VII and VIII charged petitioner with assault and armed criminal action against alleged victim Jerrell Jones. Indictment [Doc. # 9-4 at 17-19]. The State did not prosecute charges of assault and armed criminal action charged in Counts V and VI of the indictment. Memorandum [Doc. # 9-4 at 27].

[3] Materials in the record are cited with the CM/ECF document number and the page number that appears in the red header.

sentenced petitioner as a persistent offender to consecutive terms imprisonment for 15 years on Count I and 5 years on Count II, and concurrent terms of 15 years on Count III and 5 years on Count IV, for a total sentence of 20 years.[4]  Judgment  [Doc. # 9-4 at 87-91].  The Missouri Court of Appeals affirmed petitioner's convictions and sentences on direct appeal on September 17, 2013.  State v. Whitley, No. ED98812 (September 17, 2013) ("State v. Whitley") [Doc. # 9-5].  Petitioner's motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 was denied following an evidentiary hearing.  Findings of Fact & Conc. of Law (FFCL) [Doc. # 9-6 at 21-31].  On November 17, 2015, the Missouri Court of Appeals affirmed the denial of post-conviction relief.  Whitley v. State, No. ED102458 (Nov. 17, 2015) ("Whitley v. State") [Doc. # 9-9].  Petitioner timely filed this petition for relief pursuant to 28 U.S.C. § 2254 on September 28, 2016.

## II. Factual Background

The jury heard testimony that, on the evening of October 22, 2010, petitioner was at a nightclub with several friends, including Kelvin Nelson, Robert Turner, and Russell Vincent. The friends reconvened at Russell Vincent's home in St. Louis City where they were shooting dice for money and taunting each other.  Nelson and Turner testified that the group often taunted or argued with one another and that it was not a cause for concern.  See Trial Transcript [Doc. # 21-1 at 22 & 110].  At some point, petitioner got angry and started to leave the house.  Nelson caught up with petitioner on the porch and asked him where he was going.  The two men started "tussling" with one another and they fell off the front porch.  Nelson, who was much larger than petitioner, sat on petitioner and tried to get him to calm down.  Id. at 25-26.  When petitioner finally got to his feet, he told Nelson, "You're a dead nigger tonight," before getting in his car

---

[4] The sentences were imposed consecutive to sentences for crimes charged in 2009.  See Judgment.

2

and driving off. Nelson testified that he thought petitioner would go home and cool off and that would be the end of the incident. Id. at 26-27.

Robert Turner saw the altercation between Nelson and petitioner. Id. at 110-12. He helped petitioner get to his feet and told him to calm down. He heard petitioner threaten Nelson before he left, but did not think much of it. Turner was on the front porch about ten minutes later when petitioner's car came speeding around the corner and stopped in front of the house. Id. at 113-16. Petitioner got out of the car and fired a shot at Turner, who ran into the house and locked the front door behind him. Turner yelled out that petitioner was back and that he was shooting. Id. at 116-17. Turner testified that the front door swung "clean open" and petitioner entered, firing his weapon. Id. at 118-20.

Nelson was in the hallway when petitioner entered the house. He saw petitioner holding a pistol with an extended clip. Id. at 29-30. Petitioner raised the pistol and began firing at Nelson, who ran for the kitchen. Petitioner followed Nelson into the kitchen and fired several shots, hitting Nelson in the arm and stomach. Id. at 32-33. Petitioner then ran off through the front door. Nelson suffered a broken arm and collapsed lung. Id. at 34.

Investigating officer Harvey Graef testified that he recovered a total of eighteen shell casings on the front porch and in the house. Id. at 167. There was a bullet hole in the door jamb, but Officer Graef could not say whether it was caused in this crime. Id. at 159, 170-71.

Petitioner testified at trial that he was not with the group that evening. Trial Transcript [Doc. # 9-1 at 181, 192]. In response to questions about why his friends would identify him as the shooter, he testified that he was more successful in the drug trade than they were. Id. at 182. Plaintiff believed that, when Nelson was shot by an unknown person, the group saw an opportunity to eliminate him as a competitor. Id. at 194.

### III. Legal Standards

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 544 U.S. at 141; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the

4

refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1). Erroneous findings of fact by the state courts do not ensure the grant of habeas relief. Rather, the determination of these facts must be unreasonable in light of the evidence of record. Sittner v. Bowersox, No. 4:12 CV 1156 CDP, 2017 WL 5518025, at *3 (E.D. Mo. Nov. 17, 2017) (citing Collier, 485 F.3d at 423).

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 688 (1984). With respect to the first Strickland prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." Burt v. Titlow, 571 U.S. 12, 22–23 (2013) (quotation marks and citation omitted). A reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions." Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (citation omitted).

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Merely showing a conceivable effect is not

5

enough; a reasonable probability is one sufficient to undermine confidence in the outcome." Paulson v. Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although Strickland requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective — [courts] need not first make a determination regarding deficiency." Holder v. United States, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563 U.S. 170, 202 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. [Harrington v. Richter, 562 U.S. 86, 112, 101], 131 S. Ct. 770, 792, 785 (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at [102].

Williams, 695 F.3d at 831-32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

**IV.  Discussion**

Petitioner asserts five grounds for relief: (1) the trial court erred in refusing to submit petitioner's proffered instruction on the lesser-included offense of second-degree assault; (2) there was insufficient evidence to convict him of first-degree burglary; (3) the trial court erred in

6

denying the State's motion to disqualify defense counsel due to a conflict of interest; (4) trial counsel was ineffective for failing to call petitioner's girlfriend as a defense witness; and (5) trial counsel was ineffective for failing to obtain a waiver of conflict of interest. Respondent concedes that petitioner properly presented the claims in Grounds 1, 2, and 4 to the Missouri Court of Appeals but argues that petitioner procedurally defaulted the claims asserted in Ground 3 and 5.

### A.     Ground 1: Lesser-Included Offense Instruction

Petitioner contends that the trial court erred in refusing to give the instruction he proffered on second-degree assault based on "sudden passion," under § 565.060.1(1), Mo. Rev. Stat. (Supp. 2012). At the time of the trial in this matter, "sudden passion" was defined as "passion directly caused by and arising out of provocation by the victim . . . aris[ing] at the time of the offense and . . . not solely the result of former provocation." § 565.002(7).

Counsel argued at trial that the instruction was supported by evidence that the group had been drinking and that Nelson taunted petitioner and then scuffled with him when he attempted to leave the house. Trial Transcript [Doc. # 9-1 at 206-07]. The trial court rejected the instruction because the statutory definition of sudden passion "explicitly provides that it is passion which arises at the time of the offense and is not solely the result of former provocation." Id. at 210. Here, although petitioner was arguably subjected to an assault or battery, he left the scene and returned after an appreciable time with a firearm. Id. The court concluded that the issue of sudden passion was not properly in the case. Id. The Missouri Court of Appeals affirmed. State v. Whitley [Doc. # 9-5 at 4-5].

Petitioner argues that the decision of the Missouri Court of Appeals was an unreasonable determination of Missouri law. Traverse at 4 [Doc. # 12]. A federal habeas court cannot re-

7

examine a state court's interpretation and application of jury instructions. Chambers v. Cassady, No. 4:13CV2212 RLW, 2017 WL 244801, at *7 (E.D. Mo. Jan. 19, 2017) (citing Nunley v. Bowersox, 784 F.3d 468, 471 (8th Cir. 2015)). Even if the trial court violated state law, the Supreme Court "has never held that there is a constitutional requirement that lesser-included offense instructions be given in noncapital cases." Arnold v. Dormire, 675 F.3d 1082, 1086 (8th Cir. 2012). Thus, petitioner cannot establish that the decision of the State courts was contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court. Petitioner's claim in Ground 1 is denied.

### B. Ground 2: Sufficiency of the Evidence

Petitioner argues that there was insufficient evidence to sustain his conviction for first-degree burglary.

In reviewing the sufficiency of the evidence to support a criminal conviction, courts ask whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Harden v. Norman, No. 17-2067, 2019 WL 1414062, at *2 (8th Cir. Mar. 29, 2019) (quoting Jackson, 443 U.S. at 319). Here, the Court must determine whether the Missouri Court of Appeals unreasonably applied this deferential standard and thus petitioner's "sufficiency claim is 'subject to two layers of judicial deference.'" Id. (quoting Coleman v. Johnson, 566 U.S. 650, 651 (2012).

8

In order to convict petitioner of first-degree burglary, the jury had to find that he "knowingly enter[ed] unlawfully or knowingly remain[ed] unlawfully" in Russell Vincent's house. Mo. Ann. Stat. § 569.160. Petitioner argued on appeal that the evidence established that he had license to come and go from Vincent's house as he pleased. He further argued that he had been in the house earlier in the evening and there was no evidence that he did not have permission to return. State v. Whitley [Doc. # 9-5 at 6]. In reviewing this claim, the Missouri Court of Appeals noted that, when petitioner returned, he shot at the house before entering, causing Turner to run inside and lock the door. Petitioner then shot or kicked the door open, firing his weapon as he did so. Under these circumstances, the appellate court held, any previous license that petitioner had to enter the home had been extinguished. Id. at 6-7.

The Court agrees that a rational fact-finder could conclude that petitioner knowingly entered Russell's home unlawfully when he forced the door open after firing shots at the house. Petitioner "points to no comparable case from the Supreme Court of the United States to suggest that the Missouri court's decision here was unreasonable" and thus cannot establish that he is entitled to relief under Jackson. See Harden v. Norman, No. 17-2067, 2019 WL 1414062, at *3 (8th Cir. Mar. 29, 2019) (reversing district court's grant of habeas relief on Jackson claim). Petitioner's claim in Ground 2 is denied.

### C. Grounds 3 and 5: Conflict of Interest

These claims arise from defense counsel's representation of Kelvin Nelson in 2004 and 2006 on criminal offenses unrelated to this case and, briefly, while he was representing petitioner in this case.[5] PCR Transcript [Doc. # 9-10 at 29-30, 24-25]. Before trial, the State's attorney

---

[5] While counsel was representing petitioner in this case, Nelson retained counsel's firm to represent him on a "driving while revoked" charge. When counsel learned of this, he moved to withdraw from Nelson's case and returned his retainer. Id. at 24-25.

moved to disqualify defense counsel based on his prior representation of Nelson. Motion [Doc. # 9-4 at 21-24]. The trial court denied the motion. Order [Doc. # 9-4 at 25].

In Ground 3, petitioner claims that the trial court erred in denying the State's pretrial motion to disqualify defense counsel based on the conflict of interest. Because he did not raise this claim in his motion for a new trial, petitioner sought plain error review on direct appeal. Motion [Doc. # 9-4 at 82-83]; Appellant's Brief [Doc. # 9-2 at 27-28]. The Missouri Court of Appeals determined that petitioner's "argument did not facially establish substantial grounds for believing a manifest injustice or miscarriage of justice" occurred and declined to exercise its discretion to review petitioner's claim for plain error. State v. Whitley [Doc. # 9-5 at 8].

In Ground 5, petitioner claims that counsel was ineffective for failing to obtain an affirmative waiver of the conflict. In his post-conviction motion, however, petitioner mistakenly asserted that defense counsel had a conflict of interest arising from his representation of Robert Turner — a witness in this case — rather than Kelvin Nelson. Motion to Vacate [Doc. # 9-6 at 8]; First Amended Motion to Vacate [Doc. # 9-6 at 14]. At the evidentiary hearing, post-conviction counsel sought leave to amend the "typographical error" in the post-conviction motion in order to address counsel's representation of Nelson. The State's attorney objected that the proposed amendment was untimely, noting that the court file contained the original motion to disqualify based on the conflict arising from counsel's relationship with Mr. Nelson. The post-conviction court opined that the claim was probably waived but allowed counsel to present evidence. PCR Transcript [Doc. # 9-10 at 5-6]. The court later held that petitioner's conflict-of-interest claim was not properly pleaded and could not be considered. In the alternative, the court determined that petitioner had not demonstrated an actual conflict of interest that adversely affected counsel's performance. FFCL [Doc. # 9-6 at 66]. The Court of Appeals affirmed on

both findings. First, the court stated that "[c]laims not raised in a Rule 29.15 motion are waived on appeal. 'Pleading defects cannot be remedied by the presentation of evidence and refinement of a claim on appeal.'" Whitley v. State [Doc. # 9-9 at 6] (quoting Dorsey v. State, 448 S.W. 3d 276, 284 (Mo. 2014) (en banc)). And, plain error review was not available in appeals from judgments on post-conviction motions. Id. (citing McLaughlin v. State, 378 S.W.3d 328, 340 (Mo. 2012) (en banc)). In addition, the appellate court agreed that petitioner failed to demonstrate an actual conflict of interest.

Petitioner did not properly present the claims he raises here to the state courts. Under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012). When a state prisoner violates a state procedural rule, this violation serves as an independent and adequate state-law basis for a federal habeas court to uphold a state court's dismissal of a claim. Franklin v. Hawley, 879 F.3d 307, 311 (8th Cir. 2018). Federal habeas review of procedurally defaulted claims is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991), holding modified by Martinez v. Ryan, 566 U.S. 1 (2012). In order to satisfy the fundamental miscarriage of justice exception to procedural default, a petitioner must present new reliable evidence that he is actually innocent of the crime of conviction. Storey v. Roper, 603 F.3d 507, 523-24 (8th Cir. 2010). Here, petitioner does not argue that he can satisfy either avenue to lifting the procedural bar. Thus, the claims presented in Grounds 3 and 5 are procedurally defaulted.

11

### D.     Ground 4:  Failure to Call Alibi Witness

Petitioner claims that trial counsel rendered ineffective assistance by failing to secure the presence at trial of his girlfriend, Tequila Burgess, who would have testified that petitioner was with her the entire night of October 22, 2010.

Petitioner told defense counsel that he was with Ms. Burgess at the time of the shooting. Petitioner's Dep. [Doc. # 9-6 at 38-39]. Defense counsel met with Ms. Burgess who told him that she had stayed with petitioner at a motel near the St. Louis airport. PCR Transcript [Doc. # 9-10 at 9-11]. Based on this information, counsel obtained a hotel receipt that showed that Ms. Burgess had checked in to the motel about one hour after the shooting. Id. at 11. Counsel noted in his files that he did not like Ms. Burgess's demeanor and he did not think that a jury would believe her. Id. at 12-13. Nonetheless, on the morning of trial, he endorsed an alibi defense. Id. at 15; Docket Sheet [Doc. # 9-4 at 10]. He subsequently withdrew the defense because Ms. Burgess had failed to appear at his office the morning of trial, despite a promise to do so. She did not return phone calls and was not at her residence. Trial Transcript [Doc. # 21-1 at 1-2]. Petitioner raised counsel's failure to secure Ms. Burgess's presence during the post-sentencing colloquy regarding counsel's performance and the court made a finding that there was probable cause to believe that counsel overlooked an alibi defense. Sentencing Transcript [Doc. # 9-1 at 269-71].

Counsel testified at the post-conviction hearing that he did not issue a subpoena to secure Ms. Burgess's presence at trial because it was his opinion that girlfriends and family members who needed to be compelled to appear at trial were not good defense witnesses. In addition, he wanted to meet with Ms. Burgess again to dispel any doubts he had regarding her testimony but she failed to keep an appointment to meet him and his investigator was unable to locate her.

12

PCR Transcript [Doc. # 9-10 at 19-23]. Ms. Burgess did not testify at the post-conviction hearing.

The post-conviction court found that defense counsel conducted a reasonable investigation of the alibi witness. Ms. Burgess's failure to appear for a scheduled interview, coupled with counsel's long-standing concern about her testimony, led him to make a strategic decision to discard the alibi, which the court concluded was well within the range of reasonable professional assistance. FFCL [Doc. # 9-6 at 63, 67].

On appeal, the Missouri Court of Appeals noted that, in order to prevail on a claim of ineffective assistance based on counsel's failure to call a witness, petitioner was required to show that (1) defense counsel knew of Ms. Burgess's existence, (2) she could be located through reasonable investigation, (3) she would testify and (4) her testimony would have provided a viable defense. Whitley v. State [Doc. # 9-9 at 4] (quoting Place v. State, 458 S.W.3d 345, 351 (Mo. Ct. App. 2014)). In addition, petitioner had to show that defense counsel's decision was not a matter of trial strategy. The appellate court noted that Ms. Burgess did not testify at the post-conviction hearing and thus there was no way to know what her testimony would have been or whether it would have helped petitioner make his case. The court held that petitioner could not show that Ms. Burgess was willing to testify or that her testimony would have provided a viable defense.

Petitioner has not established that he is entitled to relief under the "doubly deferential" standard that applies to ineffective-assistance claims. Titlow, 571 U.S. at 15. First, he has not met his burden to show that trial counsel's strategic decision to discard the alibi defense was deficient. Second, he has not shown that the decision of the Missouri courts was contrary to, or

13

an unreasonable application of, Strickland or that the courts unreasonably applied Strickland to the facts in this case.

Petitioner's claim in Ground 4 will be denied.

* * * * *

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the petition of D'Andre Whitley for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. # 1] is **denied**.

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued, because petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 123 S. Ct. 1029, 1040 (2003) (standard for issuing a certificate of appealability).

A separate Judgment will accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of May, 2019.